**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LARRY SHARPE,<br>Plaintiff,<br><br>v.<br><br>PETER S. KOSINSKI and<br>HENRY T. BERGER, in their official<br>capacities as Co-Chairs of the<br>New York State Board of Elections,<br>ESSMA BAGNUOLA and<br>ANTHONY J. CASALE,<br>in their official capacities as<br>Commissioners of the<br>New York State Board of Elections,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Complaint<br>Case No. [To be assigned]<br>Case No.: 1:26-CV-2254 (AMN/DJS) |

**Introduction and Background**

1. The right for candidates to be placed on the ballot is fundamental to the operation of our democracy, impacting not only candidates but also the general populace: "the rights of voters and the rights of candidates do not lend themselves to neat separation," *Bullock v. Carter*, 405 U.S. 134, 143 (1972)

2. In April 2020, the State of New York increased the statewide independent nominating petition threshold under N.Y. Elec. Law § 6-142 from 15,000 to 45,000 signatures, as a means of requiring a demonstration of electoral support. Section 6-142(1) requires 45,000 signatures or one percent of the votes cast for Governor at the last gubernatorial election, excluding blank and void ballots, whichever is less. However, in practice, this law has imposed substantial barriers to ballot access for independent gubernatorial candidates. Indeed, the statutory limitations that New York placed upon the timing and methodology by which signatures are gathered, N.Y. Elec. Law §§ 6-138(4) and 6-158(9), combine to

impose substantial barriers to an independent gubernatorial candidacy. These three statutes, operating together, impose a tremendous burden on independent candidates: they provide a one-week period to file the petition (24 to 23 weeks before the election) and require that all signatures are collected within a six-week period before the filing deadline. Furthermore, this deadline occurs before the major parties have even completed their primaries. This places further difficulty on independent candidates, as interest in third party options typically rises after the primaries are already complete - prospective voters may become interested in alternatives to the major-party nominees only after those nominees have been selected.

3. Any signatures collected before that six-week collection period are invalid. N.Y. Elec. Law § 6-138(4). As applied and on its face, this statutory scheme is an unconstitutional restriction of the right to vote under both the Fourteenth Amendment and the First Amendment.

4. Plaintiff Larry Sharpe, a well-known candidate for New York Governor, is one such independent candidate whose campaign was derailed by these unconstitutional requirements. Mr. Sharpe is not a frivolous candidate. He is not an unknown candidate. He is not accused of fraud, forgery, deception, or misconduct. Rather, he is a former statewide gubernatorial candidate who previously appeared on the New York ballot and received approximately 100,000 votes. He has raised more than $1,000,000 in support of his campaigns, possesses substantial statewide name recognition, maintains a social media audience exceeding 250,000 individuals, and previously polled at approximately

six percent statewide. Indeed, in previous campaigns, such as the 2018 gubernatorial election, Sharpe received more than 95,000 votes. The exclusion of such a candidate serves no legitimate anti-fraud purpose and does not further the State's interest in limiting ballot access to serious candidates. Instead, it deprives voters of meaningful choice and imposes substantial burdens upon the constitutional rights of candidates and voters alike.

5. In 2026, Mr. Sharpe sought an independent ballot line under the name “Coalition Party,” with Shannon Joy Bones as his running mate for Lieutenant Governor. Fundraising and volunteer recruitment were substantially more difficult than in prior campaigns. The Board’s staff report, dated June 4, 2026, for its June 5 meeting, recommended invalidating the petition as facially insufficient, calculating that its 323 pages could contain no more than 1,615 signatures, below the required 45,000.

6. The combination of the high signature threshold, the severely compressed collection window, and the early, pre-primary filing deadline created a cumulative burden that must be considered together with the financial and organizational burdens demonstrated by Mr. Sharpe’s successive campaigns. Meeting a 45,000-signature requirement within a six-week (42-day) window requires collecting, on average, over 1,071 valid signatures per day, before accounting for signatures that may be invalidated upon review or challenge.

**Parties**

7. Plaintiff Larry Sharpe is a candidate seeking election as Governor of New York in the 2026 general election. He previously appeared on New York’s gubernatorial ballot in 2018 and seeks declaratory relief concerning the application of the challenged requirements to his 2026 gubernatorial candidacy.

8. Defendant Peter S. Kosinski is a Co-Chair and Commissioner of the New York State Board of Elections. He is sued solely in his official capacity in connection with the Board's administration and enforcement of the challenged election laws and its determination of statewide ballot access.
9. Defendant Henry T. Berger is a Co-Chair and Commissioner of the New York State Board of Elections. He is sued solely in his official capacity in connection with the Board's administration and enforcement of the challenged election laws and its determination of statewide ballot access.
10. Defendant Essma Bagnuola is a Commissioner of the New York State Board of Elections. She is sued solely in her official capacity in connection with the Board's administration and enforcement of the challenged election laws and its determination of statewide ballot access.
11. Defendant Anthony J. Casale is a Commissioner of the New York State Board of Elections. He is sued solely in his official capacity in connection with the Board's administration and enforcement of the challenged election laws and its determination of statewide ballot access.
12. All Defendants act under color of state law.

**Jurisdiction and Venue**

13. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The declaratory relief sought is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Venue is proper in the Northern District of New York pursuant

to 28 U.S.C. § 1391(b) because Defendants perform their official duties at the New York State Board of Elections' principal office in Albany, New York, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**Standing**

14. Mr. Sharpe has standing to bring this action. Mr. Sharpe has suffered a concrete, particularized, and actual injury-in-fact, namely, his exclusion from the 2026 general election ballot for the office of Governor, which infringes upon his First and Fourteenth Amendment rights to associate for political purposes and to cast effective votes. Mr. Sharpe's injury is fairly traceable to Defendants' enforcement of the challenged provisions of the New York Election Law. The challenged requirements governed Mr. Sharpe's unsuccessful attempt to obtain an independent ballot line in 2026 and imposed financial and organizational burdens that impaired his ability to obtain ballot access. The requested declaratory judgment would resolve the parties' dispute over the constitutionality of the challenged requirements as applied to Mr. Sharpe's candidacy. This action does not seek an order placing Mr. Sharpe on the 2026 ballot. The controversy is capable of repetition yet evading review because the challenged requirements govern recurring gubernatorial election cycles, while the election calendar limits the time available for full judicial review. Mr. Sharpe intends to seek ballot access again in a future election.

**Facts and Background**

15. Plaintiff Larry Sharpe is a businessman, author, and political activist. He was the Libertarian Party's nominee for Governor in the 2018 general election, where he received 95,033 votes. He was also the Libertarian Party's nominee for Governor in the 2022 general election. He enjoys significant name recognition and a statewide following.

16. Mr. Sharpe's prior campaigns demonstrate both substantial statewide support and experience conducting successful petition drives. In 2018, when the statewide requirement was 15,000 signatures, the Libertarian Party of New York collected 31,458 signatures and successfully placed its statewide ticket on the ballot. Mr. Sharpe subsequently received more than 95,000 votes, qualifying the LPNY for recognized party status under the law then in effect.

17. Mr. Sharpe's campaign operation combined volunteer petition circulation with paid petitioners, substantial fundraising, and sustained public outreach. According to Mr. Sharpe's campaign chronology, his 2018 campaign raised more than $500,000 and conducted more than 300 live events. The organizational activity continued after the election: Mr. Sharpe submitted LPNY party rules in January 2019 and participated in building the Party's organization. During the spring and summer of 2019, LPNY voter enrollment increased from approximately 7,000 to more than 30,000, and county committees expanded from roughly 15 to 30 of New York's 62 counties.

18. Mr. Sharpe brought this prior statewide campaign and petitioning experience to his 2022 effort. According to his chronology, he raised more than $250,000 during the signature-gathering phase and devoted much of that funding to paid petitioners as volunteer participation declined. He estimates that the overall 2022 campaign raised approximately $500,000 and held more than 200 live events. These efforts reflected an established capacity to raise funds, engage paid petitioners, mobilize volunteers, and conduct sustained outreach to voters.

19. Following the changes to New York's party-qualification requirements, the LPNY lost recognized party status after the 2020 presidential election and was required to undertake

another independent nominating petition effort in 2022. According to LPNY Chair Duane Whitmer, approximately $300,000 was expended between the Party's petitioning effort and Mr. Sharpe's campaign in connection with obtaining statewide ballot access. The Board determined on prima facie review that 42,356 signatures had been filed, fewer than the required 45,000, and found the petition facially insufficient without reaching the validity of individual signatures.

20. The unsuccessful efforts affected subsequent fundraising, volunteer recruitment, and organizational capacity. Mr. Sharpe observed that active LPNY county committees declined from roughly 30 in 2019 to fewer than 15 in 2023 and fewer than 10 in 2025. By the 2026 petitioning period, donors and volunteers expressed reluctance to repeat earlier unsuccessful efforts, and paid petitioning vendors expressed concerns about meeting the requirements.

21. The LPNY initially selected Mr. Sharpe as its 2026 gubernatorial candidate in October 2025. On April 12, 2026, however, its State Committee rescinded that nomination and chose not to undertake another Party-run statewide petition drive. According to Whitmer, this decision reflected the financial and organizational burdens demonstrated by prior election cycles and the absence of resources sufficient to undertake another viable statewide effort. Individual Libertarians remained free to assist Mr. Sharpe, but his separate Coalition Party petition was not an LPNY organizational petition drive.

22. The statutory minimum does not represent the number of signatures a campaign must realistically collect. Based on the LPNY's experience, Whitmer estimates that a viable statewide effort must target approximately 60,000 to 70,000 raw signatures to provide a reasonable likelihood that 45,000 valid signatures will remain after review and challenge.

Expanding the petitioning workforce also increases the demands for recruitment, training, supervision, transportation, and quality control within the limited circulation period.

23. The consequences also extended to local political organization. Philip Vecchio, who became chair of the Rensselaer County Libertarian Party in 2019, describes petitioning demands that competed with volunteers' employment, family obligations, candidate recruitment, and other political activity. After the 2022 gubernatorial campaign, he observed increased reluctance among volunteers to undertake another demanding petition effort. The Rensselaer organization continues to meet, but its activities are now primarily social and issue-oriented rather than directly running candidates as its organizers had intended.

**Legal Background and Precedent**

24. Mr. Sharpe seeks review of the challenged requirements as applied to his 2026 candidacy, based on the petitioning experience, fundraising difficulties, and organizational consequences described above, including events occurring after the prior litigation. The challenged requirements have previously been litigated, including in *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021), and *Libertarian Party of New York v. New York State Board of Elections*, No. 22-44-cv (2d Cir. Oct. 19, 2022) (summary order), in which Sharpe was a Plaintiff-appellant and the court affirmed summary judgment for the defendants. However, this case presents a more mature fact pattern and is not a pre-enforcement challenge.

25. The right of individuals to associate for the advancement of political beliefs, and the right of qualified voters to cast their votes effectively, are fundamental rights protected by the First and Fourteenth Amendments.

26. State laws that burden these rights must be justified by a legitimate state interest. A court considering a challenge to a state election law must weigh the character and magnitude of the injury to the rights against the precise interests put forward by the State as justifications for the burden. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Severe restrictions on ballot access must be "narrowly drawn to advance a state interest of compelling importance." Burdick, 504 U.S. at 434.

27. Restrictions on ballot access injure "two different, although overlapping, kinds of rights-the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

**COUNT ONE**

**As Applied Violation of the First and Fourteenth Amendment**

28. Plaintiff incorporates the preceding paragraphs by reference.

29. The combined effect of New York Election Law §§ 6-158(9) (early deadline), 6-138(4) (short collection window), and 6-142(1) (high signature threshold) imposes a severe burden on the First and Fourteenth Amendment rights of Mr. Sharpe and his supporters. The Second Circuit evaluates such burdens under a "totality approach," considering the "combined effect of the applicable election regulations." *Schulz v. Williams*, 44 F.3d 48, 56 (2d Cir. 1994). The act of circulating a petition is "core political speech" for which First Amendment protection is "at its zenith." *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186-87 (1999).

30. Mr. Sharpe's experience demonstrates burdens extending beyond the immediate collection of signatures. The substantial expenditures and unsuccessful petitioning effort in 2022 contributed to diminished fundraising, volunteer participation, and organizational capacity in subsequent election cycles. Those consequences materially impaired Mr. Sharpe's ability to mount another statewide petition effort in 2026.

31. Furthermore, the early, pre-primary filing deadline of May 26, 2026, severely burdened Mr. Sharpe's campaign by forcing it to compete for volunteers, media attention, and financial support before the major-party candidates were even chosen, and foreclosed access to voters who became engaged only after the June 23 primary. Such deadlines have been found to impose severe burdens where they prevent independent candidates from responding to major-party developments. See, e.g., *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (holding early deadline imposed a severe burden).

32. The severity of the burden cannot be measured solely by expressing 45,000 signatures as a percentage of New York's registered voters. The relevant inquiry must also account for the limited time in which eligible voters may be contacted, the geographic distribution of qualifying signatures, the resources required to recruit and supervise circulators, and the number of collected signatures necessary to produce a legally sufficient petition. Mr. Sharpe challenges the combined operation of these restrictions, supported by Mr. Sharpe's petitioning experience across successive election cycles.

33. The state's asserted interests in administrative convenience, ensuring orderly elections, and requiring a modicum of support are not sufficiently compelling to justify the severe burden imposed by the totality of these restrictions, as applied to Mr. Sharpe. The statutory scheme is not narrowly tailored to serve these interests. Less restrictive

alternatives are available, such as a later filing deadline, a longer collection period, or a lower signature threshold, which would serve the state's interests without unconstitutionally burdening fundamental rights.

34. By enforcing this unconstitutional scheme against Mr. Sharpe, Defendants have violated his rights and the rights of his supporters under the First and Fourteenth Amendments, actionable under 42 U.S.C. § 1983.

**COUNT TWO**

**Equal Protection Clause Violation**

35. Plaintiff incorporates the preceding paragraphs by reference.

36. Independent and party candidates pursue different routes to the ballot, and the Constitution does not require that those routes be identical. See *Jenness v. Fortson*, 403 U.S. 431, 440–42 (1971). Mr. Sharpe challenges the unequal burdens imposed by the combined operation of New York's requirements, rather than asserting that any numerical difference between the routes is necessarily unconstitutional. The burdens and the State's justifications must be evaluated in their practical electoral context. See *Anderson v. Celebrezze*, 460 U.S. 780, 789–90 (1983). Indeed, although the state has purported that it has an interest in avoiding ballot overcrowding, confusion, and ensuring qualified candidates, such interests are not so strong as to justify the exceptionally intensive combined burden imposed upon independent candidates.

37. For statewide offices, N.Y. Elec. Law § 6-136(1) requires a party designating petition to contain 15,000 signatures or five percent of the party's enrolled active voters, whichever is less. That petition concerns access to the party nomination process and draws signatures from enrolled party voters. By contrast, the independent nominating petition under § 6-142(1) provides a route to the general-election ballot and required Mr. Sharpe

to obtain 45,000 signatures. Mr. Sharpe acknowledges these differences in function and eligible signers.

38. Mr. Sharpe alleges that the threefold difference in the numerical thresholds, considered together with the early filing deadline, limited circulation period, geographic-distribution requirements, and documented need to collect signatures above the statutory minimum, imposed an unjustified discriminatory burden on his candidacy and his supporters' political association. His substantial campaign experience, past electoral support, and the financial and organizational effects of successive petition efforts demonstrate the practical burden alleged here.

39. The State has legitimate interests in orderly elections and requiring a showing of support. However, Mr. Sharpe alleges as applied to his 2026 candidacy, those interests do not justify the cumulative burden described above, and could be served through less burdensome requirements, including a longer circulation period, a later deadline, or a lower signature threshold. Defendants' enforcement of the challenged requirements thereby denied Mr. Sharpe equal protection of the laws, actionable under 42 U.S.C. § 1983. An interest in administrative convenience and theoretical reduction of frivolous candidates (which the state could accomplish in numerous, less restrictive ways) cannot overcome the fundamental rights of freedom of association and the right to vote: the bedrocks of our Constitutional, democratic system.

## Prayer for Relief

**WHEREFORE**, Mr. Sharpe respectfully prays for the following relief:

A. A finding that New York's statutory scheme consisting of New York Election Laws §§ 6-138, 6-142, 6-158(9) is unconstitutional as applied and is an undue burden under the First and Fourteenth Amendment.

B. A declaratory judgment that the combined application of N.Y. Elec. Law §§ 6-138(4), 6-142(1), and 6-158(9) to Mr. Sharpe's 2026 gubernatorial candidacy violated his rights under the First and Fourteenth Amendments.

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d).

D. Such other and further relief as the Court deems just and proper.

Dated: November 2, 2026

Respectfully submitted,

/s/ Todd Sloan
Todd Sloan
Counsel for Plaintiff
Sloan Legal
2 South Street, Suite 212
Auburn, NY 13021
315.294.0303
fax: 315.515.3021
NDNY Bar Roll # 701379

Robert E. Barnes
(Admission Pending)
Counsel for Plaintiff
Barnes Law LLP
700 S. Flower Street, Suite 1000
Los Angeles, California 90017
Tel: (310) 510-6211
Fax: (310) 510-6225
Email: robertbarnes@barneslawllp.com